**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS, TRANSPORTATION DIVISION, | ) ) ) ) ) | |
| Petitioner, | ) ) | Case No. 1:22-CV-160-SNLJ |
| v. | ) ) ) | |
| THE KANSAS CITY SOUTHERN RY. CO., | ) ) ) | |
| Respondent. | ) | |

**MEMORANDUM and ORDER**

Petitioner is the International Association of Sheet Metal, Air, Rail and

Transportation Workers, Transportation Division ("SMART").  SMART seeks to enforce

an arbitration award issued by the First Division of the National Railroad Adjustment

Board ("Board") in Docket No. 50878, Award No. 31034 (the "Award"), under Section 3

First (p) of the Railway Labor Act ("RLA"), 45 U.S.C.  § 153 First (p).  The Award

addressed the discharge of Brandon Smith ("Smith") from his employment with The

Kansas City Southern Railway Company ("KCS").  This Court recently denied KCS's

motion to transfer and ordered further briefing on KCS's motion to dismiss.  The motion

to dismiss [Doc. 11] is now ripe for disposition.

I.    **Procedural History**

The parties engaged in arbitration before the Board, and the Board issued an

Award.  The parties disagree regarding (1) whether the Award requires KCS to pay Smith

1

a "windfall amount" in backpay without a set-off for interim earnings and (2) whether

KCS must grant Smith vacation benefits.  SMART, on behalf of Smith, filed this lawsuit

seeking to enforce the terms of the Award because KCS has refused to provide Smith

with either full backpay or vacation benefits since the Award was issued.  SMART filed

its Complaint with this Court on November 22, 2022.  KCS's answer was initially due by

January 23, 2023.

On January 4, 2023, KCS contacted the neutral arbitrator in this matter, James

Darby ("Neutral Darby"), seeking a "clarification" of the Award on the issue of the

deduction of outside earnings from the amount of back pay. [Doc. 18 at 5.]  After

objections by SMART and further exchanges, Neutral Darby eventually stated that the

claim that was the subject of the Award was for back pay without any deduction of

outside earnings, that it was fully sustained, and that KCS's request would require him to

change the award in a manner that is not permissible. *Id*.

On January 19, 2023, KCS requested additional time to respond to the Complaint,

to which SMART agreed, and the Court ordered a response by March 24, 2023.

However, on March 23, 2023, KCS filed a letter with the Board to formally request an

interpretation of the Award under 45 U.S.C. § 153(m), one day before KCS's response to

SMART's Complaint was due.  The next day, KCS filed its still-pending motion to

dismiss as well as a motion to transfer to the Western District of Louisiana, which this

Court denied.

KCS's request for an interpretation was confirmed received by the Board via letter

dated March 24, 2023, and the parties were directed to provide written submissions by

2

June 7, 2023. On June 2, 2023, SMART timely filed its submission by the NRAB. KCS

filed neither its submission nor a request for an extension to file its submission at a later

date. Nonetheless, by letter dated June 20, 2023, nearly two weeks after the deadline to

file had expired, the Board notified KCS that it had not received its submission, and the

Board *sua sponte* granted a 15-day extension from the date of the letter to July 5, 2023,

for KCS to provide one, nearly a month after the original deadline.  KCS finally provided

its submission to the Board on or around July 5.  The Board has not yet established a

hearing date, and it may be several months before a hearing is held, and it could be much

later before the Board makes a decision.

## II.      Legal Framework

Respondent KCS moves to dismiss because it argues this Court lacks subject-

matter jurisdiction over SMART's petition. Federal Rule of Civil Procedure 12(b)(1)

provides the mechanism for challenging subject-matter jurisdiction.   Because the instant

motion presents a factual challenge to the Court's subject matter jurisdiction, the Court

may consider evidentiary materials to determine whether jurisdiction exists.  *Osborn v.*

*United States*, 918 F.2d 724, 729 (8th Cir. 1990).  The burden of proving subject matter

jurisdiction is on the plaintiff.  *V S Ltd. Partnership v. Department of Housing and Urban*

*Development*, 235 F.3d 1109, 1112 (8th Cir. 2000).  There is no presumption of

truthfulness attached to the complaint's allegations.  *Iowa League of Cities v. EPA*, 711

F.3d 844, 861 (8th Cir. 2013) (quoting *Osborn*, 918 F.2d at 729–30 & n. 6). Under a

factual challenge, "the district court is entitled to decide disputed issues of fact with

3

respect to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

This dispute is subject to the requirements of the Railway Labor Act, which governs collective bargaining and dispute resolution between railroads and their employees' representatives regarding rates of pay, rules, and working conditions.  45 U.S.C.  § 151, et seq.  Congress established the RLA to avoid interruptions in railroad operations and to encourage resolution of disputes between carriers and unions.  To do so, the RLA established two separate, mandatory dispute resolution procedures—one for "minor disputes" and one for "major disputes."  *See Consol. Rail Corp. v. Ry. Labor Executives Ass'n, 491 U.S. 299, 302, 305 (1989) ("Conrail").*  This Court has described the difference between minor and major disputes as follows:

> "Minor" disputes concern the meaning of an existing collective-bargaining agreement in a particular fact situation. "Major" disputes, on the other hand, relate to the formation of collective bargaining agreements or efforts to secure them, such as disputes concerning rates of pay, rules or working conditions. In sum, major disputes seek to create contractual rights, minor disputes to enforce them.

*Bhd. of R.R. Signalmen v. BNSF Ry. Co.*, No. 4:20-CV-1209 RLW, 2021 WL 4305735, at *2 (E.D. Mo. Sept. 22, 2021) (*"BRS"*) (cleaned up; internal quotations to *Carpenter v. Nw. Airlines, Inc.*, No. CIV.00-2490 ADM/AJB, 2001 WL 1631445, at *1 (D. Minn. June 7, 2001), *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994)) omitted).

The distinction is important here because minor disputes must be submitted to binding arbitration.  *Brotherhood of Maintenance of Way Employees v. Burlington Northern Santa Fe R.R.,* 270 F.3d 637, 638–39 (8th Cir. 2001) *("BMWE").*  Thus, if the

parties' disagreement here is "minor," then the RLA preempts federal subject matter

jurisdiction over such a dispute and the matter must be decided through arbitration, which

is what happened here.  *See BRS*, 2021 WL 4305735, at *2.

Finally, although the RLA instructs that Board awards are "final and binding upon

both parties to the dispute,"  45 U.S.C. § 153 First (m), the RLA contemplates that

carriers will not always comply with the Board's awards. *Id.* (citing *Bhd. of Locomotive*

*Engineers & Trainmen, Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.*,

822 F. Supp. 2d 793, 798 (N.D. Ill. 2011) ("*BLET II*")). If the losing party fails to comply

with the terms of an award, the RLA provides that the winning party may "within the

time limit in such order,…file in the District Court...a petition setting forth briefly the

causes for which he claims relief, and the [Board's] order." 45 U.S.C. § 153 First (p).

District courts are empowered by the RLA to enforce or set aside the Board's order. *Id.*

However, non-frivolous disputes about the meaning of an award constitute a minor

dispute resolvable only through arbitration.  *See Bhd. Of Maint. Of Way Employees v.*

*Burlington N.R.R. Co.*, 24 F.3d 937, 939 (7th Cir. 1994) ("*BN*").  Indeed, interpretation of

an award is within the purview of the arbitrator, not this Court.  *Brotherhood of Ry.*

*Carmen v. Atchison, T. & S.F. Ry.*, 956 F.2d 156, 160 (7th Cir. 1992) ("*Carmen*"));

*United Transp. Union v. Southern Pac. Transp. Co.*, 529 F.2d 691, 692-93 (5th Cir.

1976). And here we see the tension inherent in the RLA's scheme.  As the Seventh

Circuit has explained,

> the loser of the arbitration could try to frustrate the winner's entitlement to
> judicial assistance by arguing to the court that there was a contractual
> ground for not paying the award—an argument intended to touch off a new

contractual dispute that must be arbitrated before the award can be enforced judicially. An infinite regress looms.

*Carmen*, 956 F.2d at 157.

## III.   Jurisdiction

Naturally, respondent KCS contends that the parties' disagreement constitutes a "minor dispute" about the meaning of the award and that the case must thus be dismissed for lack of subject matter jurisdiction.  *See BN*, 24 F.3d at 939.  Petitioner SMART, on the other hand, contends that KCS has manufactured an ambiguity in order to delay compliance with the Award, and that the Award merely needs to be enforced as written.

### a.  The effect of KCS's "interpretation" request

But all of this is further complicated by the fact that KCS has in fact sought "interpretation" of the Award from the Board, potentially kicking off another months-long journey through the RLA-imposed bureaucracy.  Notably, the statute of limitations to enforce an arbitration award is two years from the date the carrier was required by the award to comply.  *See, e.g.*, *Bhd. Of Locomotive Engineers & Trainmen v. CSX Transp. Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008).  An "interpretation" does not toll the statute of limitations.  *Id.* at 1196-97. Thus, if this matter is dismissed, SMART is left vulnerable to the running of the statute of limitations.  KCS suggests it is inconsistent for SMART to avoid having the Board proceed with its interpretation process while insisting that there is no ambiguity [Doc. 26 at 4 n.2], but SMART's interest in resolving this nearly-five-year-old matter now is easily understood, particularly with the added threat of a two-year

statute of limitations.  Although this Court could stay this case rather than dismiss it, that resolves only one of SMART's legitimate concerns.

Further, KCS already informally sought guidance from the arbitrator who issued the Award.  As indicated, after SMART filed this matter with this Court but before answering the complaint, KCS informally asked the arbitrator for "clarification" on whether backpay without offsets was his intention.  The arbitrator stated that SMART "expressly stated it was seeking back pay without any deduction for outside earnings" and that "I fully sustained the claim." [Doc. 24 at 28.]  Nonetheless, a couple months later, KCS filed its formal request for interpretation.

The Court sought supplemental briefing on the issue of whether KCS's invocation of the RLA's "internal correcting process" divests this Court of jurisdiction.  *See Newkirk v. Chicago & North Western Transp. Co.*, No. 95 C 3936, 1996 WL 164376 (N.D. Ill. 1996).  Petitioner cites three cases supporting that such an invocation does not divest the district court of jurisdiction.  *See id.*; *United Transp. Union v. Union R.R. Co.*, No. 13-cv-1535, 2014 WL 1612670, at *1 n.4 (W.D. Pa. April 22, 2014); *Transportation-Commc'ns Int'l Union v. CSX Transp., Inc.*, No. 92 C 5737, 1993 WL 313584, at *3 (N.D. Ill. Aug. 17, 1993) ("*TCIU*"), *aff'd,* 30 F.3d 903 (7th Cir. 1994).  In *United Transportation Union*, for example, the court exercised jurisdiction to enforce an award on the issue of offsets even though the railroad requested an interpretation three months after the complaint was filed.  2014 WL 1612670, at *1 n.4. In *Newkirk*, the court noted that nothing in the RLA forecloses a party from filing suit in federal court while the other party claims an interpretation is required, finding that the court "does possess subject

matter jurisdiction over the instant matter, despite the existence of an internal appeals process." 1996 WL 164376, at *2.  In *TCIU*, the court—finding that the request of an interpretation did not toll the statute of limitations—noted that an "interpretation has the function of sorting out arguable ambiguities arising from the language of the award" but "does not affect the finality of an award for review or enforcement purposes."  1993 WL 313584, at *3.

KCS cites no case to the contrary, simply repeating the "primary jurisdiction doctrine" and suggesting SMART wants the Court to preempt the statutory interpretation process and decide the issue rather than wait for Board to do so.  "Under the doctrine of primary jurisdiction a court may leave an issue for agency determination when it involves the special expertise of the agency and would impact the uniformity of the regulated field."  *DeBruce Grain, Inc. v. Union Pac. R. Co.*, 149 F.3d 787, 789 (8th Cir. 1998). KCS suggests that although typically a "referral" to the Board would be made so that the agency can resolve the matter, in this case KCS's oddly-timed request for interpretation has accomplished that.  KCS goes on to tout the expertise of the agencies in cases in which the Court agrees interpretation is required.  [Doc. 26 at 6.]  As demonstrated below, and as stated by the Neutral himself, this Award is plain on its face, and thus the expertise of the Board is not required.  The fact that KCS has invoked its right under 45 U.S.C. § 153 First (m) for an interpretation of the Award does not divest this Court of jurisdiction.

### b.   The parties' dispute

Respondent KCS argues that the parties have a non-frivolous dispute whether the award requires KCS—contrary to its CBA with SMART—to pay Smith backpay without offset for outside earnings or to provide him with paid vacation time for 2023.  KCS acknowledges that SMART broadly sought certain relief in its "boilerplate" statement of the claim but asserts that the "Findings" section of the Award does not address any of the relief sought.  KCS points to the CBA and the parties' past practices in an effort to prove that its interpretation of the Award is non-frivolous.

First, with respect to vacation time, KCS points out that SMART's grievance did not mention "vacation."  It simply asked that Smith be reinstated "with full benefits restored."  Award at 1. The Award did not address Smith's remedy but instead only stated "Claim Sustained." *Id*. at 3.  Rule 45(e) of the parties' CBA requires covered employees to perform 140 days of compensated service in the preceding year in order to earn paid vacation for the next year. KCS states that Smith did not qualify, so he was not awarded paid vacation for 2023.  This action was also consistent with KCS's past practice when reinstating terminated SMART-represented employees, a practice that has occurred without objection from SMART.  Although SMART now takes the position that "with full benefits restored" includes awarding vacation as if the employee had worked the requisite number of days during the period of termination, KCS disagrees. Given the CBA language, the past practices, and the Award's silence on this issue, KCS insists its position cannot be considered frivolous.  On the other hand, full reinstatement of Smith's employment operates to act as if Smith had continued to be employed and to return him

9

to the position he would have been in had he not been wrongfully terminated.

Regardless, KCS contends that only the Board may determine the answer.

Second, with respect to SMART's demand for "windfall backpay," KCS believes

that the underlying CBA requires an outside earnings offset and the parties' past practice

after the issuance of another award (the "Carter Award") bolsters that position. In that

case, SMART failed to object when, following issuance of the Carter Award (which also

simply stated "The Claim is sustained" when the statement of the claim included the

phrase "without any deduction for earnings"), KCS took a $17,000 offset for interim

earnings in calculating backpay due Carter.   Again, then, KCS argues that SMART

cannot meet its burden to show KCS's position to be frivolous given its failure to object

to KCS's actions following the Carter Award.  SMART does not dispute the facts of the

Carter Award.

SMART instead, with respect to both matters, insists that the Award is not

ambiguous on its face and may be enforced without resorting to interpretation reserved

for the Board.  The Award stated that the claim was sustained.  The claim sought

restoration of full benefits, and vacation time is necessarily included in any fair

understanding of benefits.  In fact, KCS does not deny that the claim necessarily includes

all benefits, but instead it is complaining about the scope of those benefits.  The claim

also sought backpay without offsets, and KCS argued that an offset should be included in

its briefing before the Board.  Tellingly, after SMART filed this case, KCS informally

asked the arbitrator for "clarification" on whether backpay without offsets was his

intention.  The arbitrator stated that SMART "expressly stated it was seeking back pay

without any deduction for outside earnings" and that "I fully sustained the claim." He

continued, "even if it was my intent to have interim earnings deducted, to effectuate this I

would now at this late date have to change the Award from a full sustain to a partial

sustain." [Doc. 24 at 28-29.] Thus even the arbitrator has opined that the Award is clear

on its face.

A recent RLA case before this Court observed that "where an arbitration award is

too ambiguous to be enforced, as when the award fails to address a contingency that later

arises or when the award is susceptible to more than one interpretation, the district court

should if possible send the matter back to the original arbitration panel for clarification."

*BRS*, 2021 WL 4305735, at *4. On the other hand, this Court also noted, "that said,

ambiguities manufactured by a party seeking to use them to invalidate an award are not a

ground for a court's refusal to enforce an award." *Id.* In that case, the award stated that

the grievant was not to receive backpay, but then later circumstances (the railroad did not

reinstate the grievant in the time limit required by the award) cause the union to request

backpay. As a result, this Court held that the requested relief by the union constitutes a

new dispute, a minor one, that required dismissal for lack of subject matter jurisdiction.

*Id.* at *5.

The *BRS* decision distinguished *BLET II*, 822 F. Supp. 2d 793, which held that the

parties' dispute was not a new dispute because the railroad failed to comply with the

terms of the Award, causing the union's enforcement action with the district court to

accrue. *See BRS*, 2021 WL 4305735 at *5. The dispute in *BLET II* was different because

the award in *BLET II* "required the railroad to provide back pay to make the employee

whole." *Id.*; *BLET II*, 822 F. Supp. 2d at 799.  The union in *BRS* tried to impose back

pack where none was authorized; in *BLET II*, the award contemplated back pay sought by

the union.  This case is certainly more akin to *BLET II*.

The cases relied upon by KCS are distinguishable, as none dealt with an award

that was clear on its face.  [Doc. 12 at 7-12.]  Each of those cases involved a question as

to an arbitration award's overall scope, the meaning over future disputes, or what was

being asked for as a remedy. *See, e.g., Bhd. of Ry. Carmen v. Atchison Topeka & Santa*

*Fe Ry. Co.*, 956 F.2d 156 (7th Cir. 1992) (ordering remand of dispute over amount of

severance payment where award stated "claim sustained" and referred to a provision in

the CBA for the amount to be paid); *American Train Dispatchers v. Norfolk S. Ry. Co.*,

67 F.3d 301 (7th Cir. 1995) (after railroad complied with award related to a seven-day

dispatcher assignment, remanding separate but related dispute concerning whether

creation of five-day assignment violated the award); *United Transportation Union v.*

*Southern Pacific Transportation* Co., 529 F.2d 691, 692-93 (5th Cir. 1976) (dispute over

meaning of compensation for "time lost").  Here, KCS attempts to create ambiguity by

suggesting how the Award should be changed—to allow for offsets despite clear

instruction not to, and to deny vacation time despite clear inclusion of "restoration of

benefits."  KCS does not call for interpretation of the Award, but for a change to the

Award as written.  SMART's petition does not raise a new "dispute" but instead seeks to

enforce the Award as written.  For that reason, this Court will deny the motion to dismiss.

For the same reason, this Court will enforce the Award as requested in SMART's

response to KCS's motion [Doc. 24], including granting SMART's request for attorney's

fees pursuant to 45 U.S.C.  § 153 First (p).

Accordingly,

**IT IS HEREBY ORDERED** that respondent's motion to dismiss [Doc. 11] is DENIED.

**IT IS FURTHER ORDERED** that petitioner shall file a proposed order and judgment in accordance with this memorandum by August 10, 2023.

Dated this 28th day of July, 2023.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

13